# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **BRADLEY SAPP,** | **CIVIL ACTION NO. 5:14-CV-451-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN,** **Acting Commissioner of Social Security,** | |
| **Defendant.** | |

The plaintiff Bradley Sapp brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying his claim for Disability Insurance Benefits. The Court, having reviewed the record, will affirm the Commissioner's decision insofar as it finds that Sapp is not currently disabled but will remand this matter to the Commissioner to determine if Sapp is entitled to a closed period of disability.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court's review of the Commissioner's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.2009).

In denying Sapp's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ assumed that Sapp has not engaged in substantial gainful activity since September 1, 2011, the alleged onset date. (Administrative Record "AR" at 18.) In March 2013, Sapp began working for the U.S. Postal Service at the front window and as a sorter. He works 36 hours each week. (AR at 39.)   The ALJ determined that additional evidence was necessary to determine whether Sapp has engaged in substantial gainful activity since the alleged onset date.

(Administrative Record "AR" at 18.) The ALJ further determined, however, that, because the evidence showed that Sapp is not disabled, it was not necessary to determine whether Sapp is engaged in substantial gainful activity.

At step two, the ALJ determined that Sapp suffers from the following severe impairments: multilevel degenerative disc disease of the lumbar spine with facet arthropathy, status post three surgeries and resultant left leg pain. (AR at 19.)

At step three, the ALJ found the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR at 20.)

The ALJ determined that Sapp, who was 29 at the time of the alleged onset date (AR at 24), has the residual functional capacity (RFC) to perform "sedentary" work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following modifications and limitations:

> [T]he claimant can perform up to light exertional lifting and carrying 20 pounds occasionally and 10 pounds frequently according to his testimony. However, the claimant is limited to essentially sedentary exertional work by limitations in standing and walking. Specifically, he can stand two hours out of an eight-hour day and for no more than five minutes at one time. He can walk two hours out of an eight-hour day and for no more than 10 minutes at one time and he can sit for six hours out of an eight-hour day, but for no more than 45 minutes at one time. He can do unlimited pushing and pulling up to the exertional limitations. He can do no more than frequent balancing, no more than occasional stooping or climbing ramps or stairs, but no kneeling, crouching, crawling, or climbing ladders, ropes or scaffolds. He must avoid concentrated exposure to vibration; and he cannot work around dangerous, moving machinery or unprotected heights.

(AR at 20.)

At step four, the ALJ found that Sapp is able to perform his past relevant work as a dispatcher. (AR at 23.)

At step five, the ALJ determined that, given the described RFC, even if Sapp could not perform his past relevant work, he could perform other jobs that exist in significant numbers in the national economy and, thus, he is not disabled.  (AR at 24-25.)

## II.    ANALYSIS

Sapp first argues that the ALJ erred in failing to find that his back impairments meet or medically equal the criteria of listing 1.04. He points out that a March 2012 myelogram found nerve root impingement at L3-L4. (AR at 370.) It is true that listing 1.04 requires evidence of "nerve root compression" but is also requires evidence of "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Sapp argues only that there is evidence of nerve compression but does not discuss any other requirements of the listing. During the hearing, the ALJ asked Sapp's counsel to cite any evidence of motor loss accompanied by sensory or reflect loss and the ALJ was unable to do so. (AR at 88.)

Sapp also argues that the ALJ failed to consider several items of evidence: Sapp's testimony; "the medical evidence of two prior surgeries;" Dr. John Johnson's statement about Sapp's ability to return to work; and Sapp's use of "very strong narcotic pain medication after the third surgery."

In his opinion, however, the ALJ specifically discussed Sapp's testimony, noting that Sapp testified that he watches his three children until he goes to work at the post office, is able to care for his personal needs, dress himself, drive to work, sweep, mow the grass, fish and hunt.  (AR at 21-22).  The ALJ discussed all three back surgeries (AR at 19-20, 22) and Sapp's current pain medication (AR at 21.) The ALJ noted that Sapp takes Hydrocodone, morphine, and Lyrica. The

ALJ further noted that Sapp testified that the medication brings his pain to a tolerable level and that dry mouth is the only side effect he has experienced.

As to Dr. Johnson's statement, Sapp is referring to Dr. Johnson's treatment notes of either October 18, 2011 or March 27, 2012.  In the October 18, 2011 notes, Dr. Johnson states that he advised Sapp that if he underwent surgery, it would be a year before he returned to be "gainfully employed." (AR at 366.) Later, however, in the March 27, 2012 notes, Dr. Johnson states that he advised Sapp to take disability "from his previous type of work as a police officer" and that he may want to "consider retraining himself to do a more sedentary type of job."  (AR at 365.) The ALJ's opinion is consistent with Dr. Johnson's statements. The ALJ found that Sapp could perform sedentary work and that Sapp could not return to his prior work as a police officer.

Sapp argues that the ALJ erred in not finding that Sapp's current position at the U.S. Postal Service is a "trial work period." As Sapp notes, however, the concept of a "trial work period" is applicable to individuals who have already been determined disabled. "The trial period is an interval of up to nine months during which an individual can test their ability to work full time, without losing their disabled status." *Crawford v. Sec'y of Health & Human Servs.*, 843 F. Supp. 232, 234 (E.D. Mich. 1993) (citing 20 C.F.R. § 404.1592(a)). The trial work period is not relevant to Sapp's request to obtain disabled status. *See Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988) ("The Secretary correctly points out that there can be no 'trial work period' before a claimant files for benefits because a 'trial work period' only applies after a person has been adjudged disabled, in order to permit efforts to resume work without jeopardizing benefits if the effort failed.")

The Sixth Circuit has indicated that the concept of a trial work period may apply to applicants seeking disability status who have "degenerative diseases such as multiple sclerosis or myasthenia

gravis." *Id.* (citing *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir.1981)). Sapp does not allege to have any similar condition.

Most importantly, however, even if the trial-work period is applicable to Sapp as an applicant, the ALJ assumed for purposes of his decision that Sapp has not engaged in substantial gainful activity since the alleged onset date of September 1, 2011. Accordingly, the ALJ did not consider Sapp's current position at the U.S. Postal Service as substantial gainful activity.

Finally, Sapp argues that the ALJ erred in failing to consider whether he was entitled to a closed period of disability beginning September 1, 2011 and ending with his return to work at the postal service in March 2013. Disability benefits can be awarded for a closed period where the claimant can establish a continuing 12-month period when he was unable to engage in any substantial gainful activity. *Lang v. Sec'y of Health & Human Servs*., 1989 WL 40188, at *2 (6th Cir. 1989); *Myers v. Richardson*, 471 F.2d 1265 (6th Cir.1972); 42 U.S.C. § 423(d)(1)(A).

The ALJ determined that Sapp does not currently have a severity that meets one of the listed impairments. He further determined Sapp's current RFC and, based on that RFC, determined that there are jobs existing in the national economy that Sapp is currently capable of performing. (AR at 20, 24.) The ALJ failed to consider, however, whether Sapp might be entitled to a closed period of disability. Accordingly, this matter must be remanded to the Commissioner to determine whether Sapp is entitled to a closed period of disability benefits. *See Lang*, 875 F.2d at

For all these reasons, **IT IS HEREBY ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 12) is **GRANTED** to the extent that he seeks a remand to the Commissioner to determine if he is entitled to a closed period of disability;

2. The defendant's motion for summary judgment (DE 13) is **DENIED**;

3.  Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is

    **REVERSED** and this matter is **REMANDED** to the Commissioner for proceedings

    consistent with this opinion; and

4.  A judgment will be entered contemporaneously with this order.

Dated March 28, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY